UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUAN EMILIO PERDOMO-GOMEZ,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT et al.,<br><br>Respondents. | CASE NO. 2:26-cv-03907-JNW<br><br>ORDER GRANTING PETITION FOR HABEAS CORPUS IN PART |

## 1. INTRODUCTION

After fleeing gang violence in El Salvador, Juan Emilio Perdomo-Gomez came to the United States seeking asylum. He was detained on entry and released on an Order of Release on Recognizance ("OREC") on November 4, 2017. Almost nine years later, Immigration and Customs Enforcement (ICE) re-detained Perdomo-Gomez in Florida and revoked his OREC without notice and an opportunity to be heard. ICE eventually transferred him to the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington. Perdomo-Gomez filed a petition for writ of habeas corpus. Dkt. No. 3. For the reasons below,

the habeas petition is GRANTED in part, and the Court orders a prompt bond hearing.

## 2. BACKGROUND

Perdomo-Gomez is a native of El Salvador who fled gang violence threatened against him and his family. Dkt. No. 3-1 ¶ 3. He entered the United States without inspection on November 1, 2017, in Texas where ICE detained him and his son. *Id.* ¶¶ 4–5; Dkt. No. 9 ¶ 4. On November 2, 2017, ICE served Perdomo-Gomez with a notice to appear ("NTA") as a noncitizen "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. No. 9 ¶ 5. ICE released him on an OREC two days later. *Id.* ¶ 7. The conditions of release required him to "not commit any crimes or violate any . . . laws" and to report to ICE check-ins, and warned that a violation "may result in revocation of your release and your arrest and detention[.]" *Id.*; Dkt. No. 10-2 at 2. Perdomo-Gomez moved to Florida where he lived until ICE re-detained him. Dkt. No. 3-1 ¶ 6. In 2018, he filed an application for asylum and withholding of removal. *Id.* ¶ 7.

In February 2026, Perdomo-Gomez was arrested and charged with domestic violence. *Id.* ¶¶ 12–13. ICE issued a detainer the same day. Dkt. No. 9 ¶ 9. He remained in a Florida jail for almost four months. *Id.* ¶ 13. The parties dispute whether Perdomo-Gomez was ever convicted and neither party provided a criminal record. *Id.*; Dkt. No. 9 ¶ 11. On July 14, 2026, ICE served Perdomo-Gomez with a Notice of Custody Determination and took him into ICE custody in Florida. Dkt. No. 9 ¶¶ 12–13. The ICE officer who authorized Perdomo-Gomez's arrest was a

Detention and Deportation Officer. Dkt. No. 10-3 at 2. The notice told Perdomo-Gomez he could ask an immigration judge to review the custody decision, but he checked neither the box requesting review nor the box declining it. *Id.* The Government provides no documentation showing the revocation of Perdomo-Gomez's OREC. ICE transferred him to NWIPC on July 28, 2026, where he has remained in custody. Dkt. No. 9 ¶ 15.

On August 7, 2026, ICE served Perdomo-Gomez with another NTA, and an IJ denied as pretermitted his asylum application and ordered him removed to El Salvador on September 16, 2026. *Id.* ¶¶ 16–17; Dkt. No. 10-4 at 5. Perdomo-Gomez says he mailed a timely appeal of the IJ's decision to the BIA; the Government states it does "not have a record" of the appeal as of the time it filed its return. Dkt. Nos. 3-1 ¶ 18; 9 ¶ 17. On October 20, 2026, ICE served Perdomo-Gomez with a 7-day Notice of Imminent Removal as required by the Court's scheduling order, Dkt. No. 6, and Perdomo-Gomez filed a Temporary Restraining Order (TRO) a few days later, Dkt. No. 11.

## 3. DISCUSSION

### 3.1 Legal standard.

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723,

779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### 3.2 Perdomo-Gomez is not subject to mandatory detention under 8 U.S.C. § 1225(b).

The Government argues relief should be denied because Perdomo-Gomez is mandatorily detained under 8 U.S.C. § 1225. A person detained under § 1225 may be released only under the agency's parole authority, 8 U.S.C. § 1182(d)(5)(A). Perdomo-Gomez was released on an OREC. Dkt. No. 10-2. Release under an OREC is authorized only under § 1226(a)(2)(B); *see also Ortega Cervantes v. Gonzales*, 501 F.3d 1111, 1115–16 (9th Cir. 2007) (holding noncitizens released on an OREC must necessarily have been detained and released under § 1226). That Perdomo-Gomez was detained and released under § 1226 is reaffirmed by the Government's statement that Perdomo-Gomez's NTA indicates that he is charged under the Immigration and Nationality Act § 212(a)(6)(A)(i) (codified at 8 U.S.C. § 1182(a)(6)(A)(i)), which reads: "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." Dkt. No. 9 ¶ 5. The Court finds that Perdomo-Gomez is not subject to mandatory detention under

Section 1225(b) and is instead detained under Section 1226(a). The Government appears to concede as much as it asks the Court to find in the alternative that Perdomo-Gomez is entitled at most to a post-detention bond hearing. Dkt. No. 8 at 5.

### 3.3 Perdomo-Gomez's re-detention and OREC revocation violated due process.

The Government argues Perdomo-Gomez's re-detention comported with due process. Dkt. No. 8 at 5. To determine what process the Government must provide before depriving a person of a constitutionally protected interest, courts apply the test set out in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). They weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest. *Id.*

First, Perdomo-Gomez has a strong private interest in his liberty as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. That liberty interest exists even when release is conditional and must be afforded substantial weight. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) (collecting cases). Relatedly, Perdomo-Gomez "has an interest in the government adhering to the requirement not to re-detain him absent (1) a revocation made by an appropriate official and (2) a material change in circumstances." *Singh v. Noem*, No. 2:26-CV-00503-LK, 2026 WL 657036, at *6 (W.D. Wash. Mar. 9, 2026); *see also* 8 C.F.R. § 236.1(c)(9). While this factor weighs in Perdomo-Gomez's favor, courts in this District have found that "the

individual interest is not as strong as it would be for an individual without any showing of material changed circumstance," when the Government shows serious criminal activity is involved. *Quinonez Torres v. Hermosillo*, No. 2:26-CV-00076-TLF, 2026 WL 547591, at *9 (W.D. Wash. Feb. 23, 2026) (finding the liberty interest was not as strong because "there is an undisputed showing of changed circumstances as petitioner has been rearrested based on pending criminal charges involving assault against a family or household member."); *see also Lima Gamez v. Hernandez*, No. 2:26-CV-01104-BAT, 2026 WL 1382362, at *6 (W.D. Wash. May 18, 2026) ("To be sure, [petitioner's] liberty interest was diminished when he violated the terms of his OREC with the conduct resulting in a criminal conviction."); *Geler v. Blanche*, No. 2:26-CV-00481-LK, 2026 WL 1251660, at *5 (W.D. Wash. May 7, 2026) (finding that petitioner's post-OREC criminal conviction made his liberty interest "not as strong as it would be for an individual without any showing of material changed circumstance[.]"). Perdomo-Gomez does not dispute that he was arrested on a domestic violence charge and held in jail for almost four months. Dkt. No. 3-1 ¶¶ 12–13. But this first *Mathews* factor still weighs in his favor.

Second, the risk of erroneous deprivation and the value of additional procedures are high. The Government argues the risk is "minimal" because Perdomo-Gomez's re-detention and revocation "was based on objective facts." Dkt. No. 8 at 7. It argues that Perdomo-Gomez violated his conditions of release because a Florida court convicted him of assault. Dkt. No. 9 ¶ 11. But no record of this alleged conviction is provided outside of the Government's declaration and Perdomo-Gomez's declaration states that all charges were dropped. Dkt. No. 3-1 ¶

13. The IJ's order of removal provides extensive detail about the allegations of Perdomo-Gomez's criminal charge, which supports the Government's account. Dkt. No. 10-4. But the Court cannot resolve a conflict in sworn testimony on this record, and no neutral decisionmaker has had the chance to. The parties also dispute whether Perdomo-Gomez ever missed an ICE check-in or violated any other conditions of release. The Government says he missed all of his reporting dates, but Perdomo-Gomez says he reported to ICE for check-ins every four or five months until COVID-19, after which ICE never scheduled him for another appointment. Dkt. Nos. 9 ¶ 7; 3-1 ¶¶ 9–11.

The Government also argues that Perdomo-Gomez's alleged violation of his OREC conditions "provided ICE with a lawful basis to detain him without prior notice and a pre-deprivation hearing." Dkt. Nos. 8 at 7; 9 ¶ 11. But "[t]hat the Government may believe it has a valid reason to detain [Perdomo-Gomez] does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). And courts have repeatedly found that the Government must provide due process to noncitizens before revoking supervised release and re-detaining them. *See Tesara v. Wamsley*, No. C25-1723-KKE-TLF, 2025 WL 3288295, at *1, *6 (W.D. Wash. Nov. 25, 2025) (even when it alleges supervised release violations, the Government must provide notice and a pre-detention hearing to comply with due process); *Ledesma Gonzalez*, 2025 WL 2841574, at *8–9; *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *5 (E.D. Cal. Jan. 5, 2026) ("Although Respondents allege in their opposition that Petitioner repeatedly violated the terms of her release

[citation omitted], no neutral arbiter has determined whether those facts show that Petitioner is a flight risk or danger to the community."). But the facts of Perdomo-Gomez's assault charge "could reasonably be seen as presenting an urgency requiring arrest and detention before a hearing." *Quinonez Torres*, 2026 WL 547591, at *9.

Perdomo-Gomez also argues that the Government violated its own OREC regulations when it re-detained him. Here, a Detention and Deportation Officer signed the "notice of custody determination." Dkt. No. 10-3 at 2. Detention and Deportation Officers are not among the officials authorized to revoke supervision under Section 1236.1(c)(9), and the Government offers no evidence that an authorized official decided to revoke Perdomo-Gomez's OREC. *See United States v. Gemmill*, 535 F.2d 1145, 1152 (9th Cir. 1976) (agency officials not explicitly granted authority in regulation lack authority to act). The risk of erroneous deprivation is significant when the Government fails to follow its own procedures. *Obregon Ante v. Lyons et al.*, No. 2:26-CV-02464-LK, 2026 WL 2516888, at *6 (W.D. Wash. Aug. 26, 2026).

Third, the Government has "an obvious interest" in protecting the public from dangerous individuals. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). But this interest does not erase the due process requirement to provide a prompt post-deprivation hearing. *See Reyes*, No. 2026 WL 820481, at *4; *Quinonez Torres*, 2026 WL 547591, at *6. The Government does not provide any reason why it could not have held a *post*-arrest hearing. And the Government's interest in removing noncitizens whose applications have been denied, Dkt. No. 8 at 7, "is not

implicated here, where [Perdomo-Gomez] *detention* is at issue—not [his] removal from the United States." *Espinoza Palacios*, 2026 WL 686138, at *8.

All *Mathews* factors favor Perdomo-Gomez and support finding that his detention violates due process. *Aslan v. Wamsley*, No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (W.D. Wash. Jan. 29, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1324). It is undisputed that Perdomo-Gomez has still not received a hearing where a neutral arbiter determined he was a flight risk or danger to the community.

The Government argues that the appropriate remedy in this case is a bond hearing and not release. Dkt. No. 8 at 5. Given the nature of Perdomo-Gomez's criminal arrest, the Court agrees that a prompt post-deprivation hearing would be consistent with due process. *See Geler*, 2026 WL 1251660, at *7; *Quinonez Torres*, 2026 WL 547591, at *10; *Reyes*, 2026 WL 507678, at *5. If the Government fails to provide Perdomo-Gomez with a bond hearing within fourteen days of this Order, he must be immediately released. *Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020 WL 1082648, at *4 (N.D. Cal. Mar. 6, 2020) (ordering the petitioner's immediate release on appropriate conditions where the respondents did not provide a constitutionally compliant bond hearing after the court granted the petitioner's habeas petition and ordered a bond hearing).

Because it is unclear on this record whether Perdomo-Gomez has a final order of removal and because the Court orders a prompt bond hearing, it does not reach Perdomo-Gomez's claim that his detention has become unconstitutionally prolonged. *See* Dkt. No. 3 at 15–17 (citing *Zadvydas*, 533 U.S. at 690).

### 3.4 Other relief requested.

The Government argues that, if Perdomo-Gomez's habeas petition is granted, it should not be required to prove that re-detention is appropriate by clear and convincing evidence at any future pre-detention hearing. Dkt. No. 8 at 7–8. But it is not clear Perdomo-Gomez asked for a heightened evidentiary standard or offered a basis for the Court to impose this standard. The Court declines to do so. To the extent Perdomo-Gomez seeks a permanent injunction imposing a clear and convincing standard of review for any future pre-detention hearing, that request is denied.

Next, the Government asks the Court to deny Perdomo-Gomez's request to order his release under the previous conditions of his OREC and without a GPS monitoring device. *Id.* at 8. Because the Court does not order Perdomo-Gomez's immediate release, the Court DENIES this request as moot.

Lastly, the Government argues Perdomo-Gomez's additional requests for "lost income while in detention" and "transportation for his return to Florida" are not within the scope of habeas relief. Dkt. No. 8 at 8–9. Perdomo-Gomez provides no basis for these sources of relief. The Court DENIES these additional requests for relief.

## 4. CONCLUSION

Accordingly, the Court orders as follows.

1. The Petition for a Writ of Habeas Corpus is GRANTED in part. Dkt. No. 3.

2. Within FOURTEEN (14) days of this Order, the Government must either provide Perdomo-Gomez with a bond hearing or release him under an appropriate order of supervision.
3. If the individualized bond hearing is not conducted within 14 days of this Order, the Government MUST release Perdomo-Gomez within 24 hours under appropriate conditions of supervised release.
4. Perdomo-Gomez's additional requests for relief are DENIED.
5. Perdomo Gomez's Motion for Temporary Restraining Order is DENIED AS MOOT. Dkt. No. 11.

Dated this 26th day of October, 2026, at 3:47 p.m.

Jamal N. Whitehead
United States District Judge